IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PEOPLE'S UNITED EQUIPMENT   §
FINANCE CORP.,   §
  §
      Plaintiff,   §
  §
VS.   §   CIVIL ACTION H-10-2016
  §
RICHARD L. HALLS, CHARLES A.   §
HALLS, HALLS, INC. AND HALLS   §
FREIGHT BROKERAGE, INC.,   §
  §
      Defendants.   §

## OPINION AND ORDER OF SUMMARY JUDGMENT

Pending before the Court in the above referenced cause to collect debt owed under promissory notes and guaranties is a motion for summary judgment (instrument #17), filed by Plaintiff People's United Equipment Finance Corp. f/k/a Financial Federal Credit Inc. Defendants/Guarantors Richmond L. Halls ("RL Halls"), Charles A. Halls ("CA Halls"), Halls, Inc. and Halls Freight Brokerage, Inc. ("Brokerage") have failed to respond to the motion.

### Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden to demonstrate that no genuine

-1-

issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 325 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993). Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477

U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).   Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). "'[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.'" *Lawrence v. Univ. of Texas Medical Branch*, 163 F.3d 309, 313 (5th Cir. 1999), *quoting Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983).   Nor are pleadings competent summary judgment evidence.   *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996).

A motion for summary judgment cannot be granted merely because no opposition has been filed, even though a failure to respond violates a local rule.   *Hibernia National Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985), *citing John v. State of La. (Bd. of Trustees for State Colleges & Universities)*, 757 F.2d 698, 709 (5th Cir. 1985).   "The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant

-3-

the motion regardless of whether any response was filed. *Id.,* *citing id.* at 708. A decision to grant summary judgment based only on default is reversible error. *Id.* Even if a plaintiff fails to file a response to a motion to dismiss despite a local rule's mandate that a failure to respond is a representation of nonopposition, the Fifth Circuit has rejected the automatic granting of dispositive motions without responses without the court's considering the substance of the motion. *Watson v. United States*, 285 Fed. Appx. 140, 143 (5th Cir. 2008), *citing Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006), and *Johnson v. Louisiana*, 757 F.2d 698, 708-09 (5th Cir. 1985).

### Plaintiff's Motion for Summary Judgment (#17)

The motion, supported by an affidavit from Steven Kezman[1] and copies of all relevant documents (promissory notes, security agreements, guaranties, deed to secure debt, and bankruptcy court orders), explains that secured lender Plaintiff provided financing to Halls of Cross, Inc. ("Cross") for the acquisition and/or purchase of equipment and/or for other business purposes. Defendants and Halls of Georgia, Inc. ("Georgia") guaranteed payment and performance of all obligations of Cross to Plaintiff, but have defaulted on their obligations by failing to make monthly

---

[1] Kezman is Vice President of Plaintiff People's United Equipment Finance Corp., Branch Manager of the Transportation Division of Plaintiff's Charlotte, North Carolina Office, and custodian of Plaintiff's records

-4-

installments when due.   Plaintiff also provided financing to Georgia to acquire and/or purchase equipment and/or for other business purposes.   Defendants guaranteed the payment and performance of all obligations of Georgia to Plaintiff, but have defaulted on their obligations by failing to make monthly installments when due.

On January 4, 2010, Cross filed a petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case No. 10-60224; thus Cross is not named as a defendant in this action.   On that same date Georgia also filed a petition under Chapter 7 in the same Bankruptcy Court, Case No. 10-60219, and therefore it, too, has not been named as a party to this case.

Cross's obligations are based on three promissory notes (the "Cross Notes") executed by Cross and delivered to Plaintiff, simultaneously with security agreements ("Cross Security Agreements") dated the same dates as the Notes and granting Plaintiff a security interest in all of the equipment (described on Schedule"A" to each security agreement)(collectively, the "Cross Equipment"), along with a blanket security interest in all assets of Cross (the "Cross Blanket Collateral"): (1) a note dated June 17, 2008 for $634,451.21; (2) a note dated June 17, 2008 for $694,997.12; and (3) a note dated June 27, 2008 for $338,436.00. Plaintiff perfected its security interest in the Cross Security

Agreements by filing UCC-1 financing statements in all appropriate jurisdictions and locations and by recording its lien on the titles to the Cross Equipment.  The Cross Notes and the Cross Security Agreements provide for acceleration of all indebtedness due under the terms of the Cross Notes in the event of default by Cross under any of its obligations to Plaintiff.  The Cross Notes and the Cross Security Agreements are cross-collateralized and cross-defaulted.

Georgia's obligations to Plaintiff arise from a single promissory note (the "Georgia Note"), executed by Georgia and delivered to Plaintiff, dated June 17, 2008 in the original amount of $44,053.98.  Simultaneously Georgia executed and delivered to Plaintiff a Security Agreement (the "Georgia Security Agreement") of the same date as the Georgia Note, granting Plaintiff a security interests in all of the equipment described on Schedule "A" to the Georgia Security Agreement (the "Georgia Equipment"), as well as a blanket security interest in all assets of Georgia (the "Georgia Blanket Collateral").[2]  Plaintiff perfected its security interest in the Georgia Security Agreement by filing UCC-1 financing statements in all appropriate jurisdictions and locations and by recording its lien on the titles to the Georgia Equipment.  The Georgia Note and the Georgia Security Agreement provide for

---

[2] Plaintiff states that at times it collectively refers to the Cross Notes and the Georgia Note as "Notes" and the Cross Security Agreements and Georgia Security Agreement as the "Security Agreements."  Similarly the Cross Equipment and Georgia Equipment are sometimes collectively designated as "Equipment."

acceleration of all indebtedness due under the terms of the Georgia Note in the event of default by Georgia under any of its obligations to Plaintiff.

On or about March 4, 2003, RL Halls, CA Halls, Halls, Inc. and Brokerage each executed and delivered to Plaintiff a continuing guaranty of the obligations of Cross (the "2003 Cross Guaranties"). The Guaranty served as part of the consideration for Plaintiff's funding of the Cross Notes and Plaintiff states that it relied upon the Guaranty in doing so.

On or about November 7, 2007 these same Defendants executed and delivered to Plaintiff a continuing guaranty of the obligations of Cross (the "2007 Cross Guaranties").  The Guaranty constituted part of the consideration for Plaintiff's funding of the Cross Notes and Plaintiff states that it relied on the Guaranty in doing so.

On or about June 17, 2008, these Defendants executed and delivered to Plaintiff a continuing guaranty of the obligations of Cross (the "2008 Cross Guaranties").  Each Guaranty formed part of the consideration for Plaintiff's funding of the Cross Notes and Plaintiff asserts that it relied on the Guaranty in doing so. According to each Guaranty, the Guarantor named in it agrees to be directly and unconditionally liable to Plaintiff, without reduction by reason of any defense, setoff or counterclaim, for the due payment and performance of all obligations of the Subject named

therein to Plaintiff.   Each Guaranty also provides that the Guarantor's liability to Plaintiff is direct and unconditional and may be enforced against the Guarantor without prior resort to any other right, remedy or security and shall continue notwithstanding any repossession or other disposition of security, regardless of whether same may be an election of remedies against the Subject named therein, that the liability of the Guarantor to Plaintiff shall not be released, impaired or satisfied for any reason until all obligations of the Subject named therein to Plaintiff have been full paid and performed, with interest, and that the Guarantor will pay Plaintiff's reasonable attorneys' fees if the Guaranty is referred to an attorney for enforcement, together with any and all court costs and expenses.   All notices to which the Guarantor may be entitled, including but not limited to presentment, demand, notice of intent to accelerate, notice of acceleration and protest, are expressly waived by the terms of the Guaranties.

As additional security for the obligations of Cross and Georgia to Plaintiff, RL Halls executed and delivered to Plaintiff a Deed to Secure Debt ("Deed"), dated June 17, 2008, granting Plaintiff a security interest in all that certain real property in DeKalb County, Georgia.  *Inter alia*, Plaintiff reserved its rights under the Deed to foreclose the Deed in accordance with Georgia law.

Plaintiff maintains that, as the owner and holder of the Notes, the Security Agreements, each Guaranty, and the Deed, it is entitled to payment thereof.   Plaintiff states that it has fully performed all of its duties and obligations under the terms of these documents. Cross has failed to pay payments as promised under the Cross Notes, and Georgia has failed to make payments as promised under the Georgia Note.   Moreover Guarantors RL Halls, CA Halls, Halls, Inc. and Brokerage have failed to make payments as promised under the Notes and each Guaranty.

On February 23, 2010 an Order Granting Stay Relief to Financial Federal Credit Inc. was entered in the Cross Bankruptcy action, terminating the automatic stay as to Plaintiff and authorizing Plaintiff to foreclose upon, collect, liquidate and/or pursue any other remedies available to it under state law relating to the Equipment and to apply any proceeds against the outstanding loan balance.   On the same day, a similar order was entered into the Georgia Bankruptcy proceeding terminating the automatic stay as to Plaintiff and authorizing Plaintiff to foreclose upon, collect, liquidate and/or pursue any other remedies available to it under state law relating to the equipment and to apply any proceeds against the outstanding loan balance.   The equipment has since been disposed of, as described in Exhibits 13-15, attached to the Kezman

Affidavit.  Moreover after notice to Defendants,[3] among others, in accordance with the law, Plaintiff sold the foreclosed Equipment at a public sale on March 30, 2010 for a total price of $436,600.00. Plaintiff maintains this amount was the Equipment's reasonable market value, as supported by Kezman affidavit.  After crediting the net proceeds of this public sale, there remains an unpaid balance of $552,496.66, as well as interest and attorneys' feeds accumulated after March 30, 2010.

Supported by Kezman's affidavit, Plaintiff argues that the sale was commercially reasonable:  it was held on Tues., March 30, 2010 at 10:00 a.m., not early in the morning, at the end of the day or during lunch hour; it was conducted at an easily accessible location in Charlotte, North Carolina, i.e., Economy Transport Group, Inc, at 3931 Statesville Avenue; and the foreclosed

---

[3] Before disposing of collateral securing a debt, the Uniform Commercial Code requires a creditor to "give reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made." Tex. Bus. & Com. Code sec. 9.611(b)(Vernon 2002).  "The purpose of this notification is to give the debtor an opportunity to discharge the debt, arrange for a friendly purchaser, or to oversee that it is conducted in a commercially reasonable manner." *FDIC v. Lanier*, 926 F.2d 462, 464 (5th Cir. 1991), *citing* 2 J. White & R. Summers, Uniform Commercial Code sec. 27-12 at 598-99 (3d ed. 1998); S.C. Code Ann. Sec. 36-9-611 (2009); Ga. Code Ann. Sec. 11-9-611 (2011).
Plaintiff's notice is described specifically in the motion and in Kezman's affidavit.  Moreover the sale was advertised in *The Charlotte Observer* on March 24, 2010 and March 27, 2010 and in Mid Atlantic Issue of Truckpaper.Com (page 110).  Plaintiff also sent notice of the Public Sale to other potentially interested parties by certified mail, return receipt requested and/or first class mail, postage prepaid.

Equipment was available for inspection for several days prior to the date of the Public Sale.   Furthermore, just before the sale began, the notice was read aloud and those attending were given an opportunity ask questions.   After bidding opened, the foreclosed Equipment was sold one item at a time.   The Public Sale resulted in proceeds of $436,600.00, which Plaintiff maintains was the reasonable market value of the equipment on that date.   Plaintiff specifies the costs associated with advertising, preparing for, and conducting the Public Sale, amounting to $25,403.47, all of which it states were reasonable and necessary.

Plaintiff's motion and Kezman's affidavit demonstrate Kezman's qualifications to evaluate the reasonableness of the Public Sale and the market value of the proceeds:

> 44.  Mr. Kezman has been in the equipment finance business for twenty-five years.   He has personally conducted at least 120 public sales and has arranged or supervised others in arranging many more such sales.   He has also attended numerous other sales conducted by others, his knowledge of the locations where the Public Sale was conducted and his review of the advertising of the Public Sale, it is his opinion that the sale of the Foreclosed Equipment was conducted in accordance with industry standards and was commercially reasonable in all respects.   Kezman Affidavit par. 45.

> 45.  In deciding how much Plaintiff would bid at the Public Sale, Mr. Kezman inspected the Foreclosed Equipment, which showed the Foreclosed Equipment to be in poor condition.   It was apparent that the Foreclosed Equipment was poorly maintained.   In addition, he consulted various pricing resources, including the following web sites: http://www.taylorandmartin.com/tvq; http://www.truckpaper.com; http://truckcenter.com.

     46.  Each of these websites lists property similar to the Foreclosed Equipment for sale, and reports sales results.  These websites are commonly consulted by buyers and sellers of equipment like the Foreclosed Equipment, by banks and finance companies, and by equipment appraisers.  In addition to these websites, Mr. Kezman consulted with dealers in property like the Foreclosed Equipment.  Based on the condition of the Foreclosed Equipment at the time of the Public Sale, and the pricing information Mr. Kezman obtained from the above websites and from dealers, it is his opinion that the sale prices of the Foreclosed Equipment as of the date of the Public Sale.  Kezman Affidavit par. 47.

#17 at pp. 13-14, pars. 44-46.

After crediting the net proceeds of the Public Sale and all other sums, $552,496.66, together with interest and attorneys' fees, still due under the Notes and the Security Agreements to Plaintiff, Plaintiff asserts that it is entitled to judgment against Defendants, jointly and severally, for that amount, under the Notes, Security Agreements, each Guaranty, and the Deed. According to the Notes, interest accrues after maturity, whether by acceleration or otherwise, and the maximum lawful rate, not to exceed 0.0666% per day, until paid in full.  The maximum lawful rate by Texas law is 18% per annum.  Thus the balance due and owing by Defendants, jointly and severally, to Plaintiff as of March 30, 2010, was $552,496.66.  Prejudgment interest has accrued at the contractual rate of 18% per annum since March 30, 2010, for a total accrued interest of $83,374.03 as of January 20, 2011, and will continue to accrue at the rate of $272.46 per day until  entry of judgment.

## Court's Decision

Plaintiff has shown that Cross and Georgia defaulted on their Notes and that Defendants, as Guarantors, failed to make payments as promised under the Notes and Guaranties.

The Court finds that the guaranties of payment at issue here are clear and unambiguous.  A guaranty of payment is an obligation to pay when the debt is due if the debtor does not pay it:  a guarantor of payment is primarily liable and waives any requirement that the holder of the note take action against the maker as a condition precedent to his liability on the guaranty.  *Ford v. Darwin*, 767 S.W. 2d 851, 854 (Tex. App.--Dallas 1989), *citing Hopkins v. First Nat'l Bank at Brownsville*, 551 S.W. 2d 343, 345 (Tex. 1977).  A guaranty of payment therefore requires no condition precedent to its enforcement other than a default by the principal debtor.  *United States v. Vahlco Corp.*, 800 F.2d 462, 466 (5th Cir. 1986); *Cox v. Lerman*, 949 S.W. 2d 527 (Tex. App.--Houston [14[th] Dist.] 1997).  In a guaranty of payment action, the lender may sue the guarantor without joining the principal debtor.  *Darwin*, 767 S.W. 2d at 854*, citing Ferguson v. McCarrell*, 582 S.W. 2d 539, 541-42 (Tex. Civ. App.--Austin 1979), *writ ref'd n.r.e.*, 588 S.W. 2d 895 (Tex. 1984).   As argued by Plaintiff, the guarantees here placed no conditions upon their enforceability other than default of payment by the debtors, which Plaintiff has established here; therefore the guaranties are absolute and unconditional guaranties

-13-

of payment of all obligations of the Subject named in them. *Reece v. First State Bank of Denton*, 566 S.W. 2d 296, 297-98 (Tex. 1978); *Bishop v. National Loan Investors, LP*, 915 S.W. 2d 241, 245 (Tex. App.–Fort Worth 1995, writ denied); *Peoples Fed. Sav. And Loan Ass'n v. Myrtle Beach Retirement Group, Inc.*, 387 S.E. 2d 672, 674 (S.C. 1989); *Ford Motor Credit Co. V. Sullivan*, 318 S.E. 2d 188, 190-91 (Ga. 1984).

The debtor on a secured note bears the burden of proving that a foreclosure sale was unreasonable. *Texas Refrigeration Supply, Inc. V. FDIC*, 953 F.2d 975, 982 (5th Cir. 1992)(and cases cited therein). Plaintiff, as the secured lender here, has presented evidence that the Public Sale of the Equipment was commercially reasonable, but Defendants have failed to respond and have failed to satisfy their burden of demonstrating that the Public Sale was not reasonable.

Plaintiffs have submitted documentary evidence showing that Plaintiff is entitled to judgment against Defendants in the amount of $552,496.66, plus interest and attorneys' fees, as provided in the Notes, the Security Agreements, each Guaranty, and the Deed. Defendants have failed to respond and to raise a genuine issue of fact for trial. Thus the Court concludes that as a matter of law summary judgment in favor of Plaintiff People's United Equipment Finance Corp. against Defendants Richmond L. Halls, Charles A.

-14-

Halls, Halls, Inc., and Halls Freight Brokerage, Inc. is proper. The Court

ORDERS that Plaintiff's motion for summary judgment (#17) is GRANTED.  A final judgment shall issue by separate order.

**SIGNED** at Houston, Texas, this  12th  day of   May  , 2011.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE